(No. 11048.)

LILA MOORE, Appellant, vs. ELLA SHOOK et al. Appellees.

*Opinion filed December 21, 1916.*

1. EQUITY—*same principles are generally applicable to all three classes of bills of review.* Bills of review, or bills in the nature of bills of review, are divided into three classes: bills for error appearing on the face of the record, bills for newly discovered evidence, and bills for fraud impeaching the original transaction; and the same principles are generally applicable to all three classes.

2. SAME—*when the complainant will be given relief although he gives his bill a wrong name.* Even though the complainant has given his bill a 'wrong name, still if the averments show he is entitled to relief and the prayer of the bill will admit of granting the relief which he claims, he should be given a hearing.

3. SAME—*decree in equity not final until approved and filed for record.* A mere oral announcement by the chancellor of his decision and the grounds upon which it is based is not controlling, but the whole matter is completely under his control, and is subject to be altered, changed or even disregarded until the written decree is approved and filed for record; but the chancellor may, at the request of a party, direct that the decree be dated as of the time the decision was announced, if the merits of the case are not affected.

4. SAME—*decree of divorce need not be signed by the chancellor.* A decree in a divorce proceeding must be held to date from the day the decree is filed for record with the clerk unless the record is amended to show otherwise, and it is not necessary that the decree be signed by the chancellor.

5. SAME—*decree may be amended at any time to correct clerical errors.* After a decree has been entered and the term of court has expired the decree cannot be amended to correct an alleged error involving the merits unless there is something in the decree which authorizes the court to retain jurisdiction of the case, but a mere clerical error in making up the records whereby they fail to express the truth may be corrected any time if no injury will result.

6. SAME—*what amendments of judgment may be made at subsequent term.* The trial court, at a subsequent term, may from its minutes amend a judgment and enter an order *nunc pro tunc* to correct it so that it will show the judgment in fact rendered, and a mistake in the date of the judgment or decree may be corrected at a subsequent term, since the entry is a ministerial act.

7. SAME—*when mistake of parties as to when decree of divorce took effect is one of fact.* Where a chancellor decrees a divorce,

enters his finding on his minutes and announces his decision orally but the formal decree is not approved or entered until two weeks later, and the husband, thinking that the divorce took effect from the oral announcement of the decree, marries again within a year from that date but within less than a year from the date of the entry of the decree, the mistake of the parties to such marriage is one of fact and not of law.

8. SAME—*equity may, on filing of an original bill, correct clerical error in decree.* A court of equity by an original bill may, under certain conditions, exercise its jurisdiction to correct mistakes in judgments and decrees where the error is clerical or ministerial and not judicial.

9. SAME—*one seeking to amend judgment or decree must have rights which are injuriously affected.* A person making an application, either on motion or by a bill in chancery, to modify or set aside a judgment, either during or after the term at which it was obtained, must either be a party to such judgment or in privity with such party, or be possessed of rights or equities which are directly and injuriously affected by the judgment.

10. SAME—*when party to a second marriage is injuriously affected by the decree divorcing her husband from his former wife.* Where a chancellor, on decreeing a divorce, announces his decision orally but the written decree is not entered until two weeks after, and the husband marries again within a year from the date the decree was pronounced but less than a year from its entry, the second wife has rights which are injuriously affected by the failure to date the decree as of the day when it was announced.

11. SAME—*when date of divorce decree may be corrected without making divorced wife a party.* Where a decree of divorce is not entered and dated until two weeks after it was announced, the husband's second wife, in order to protect her property rights acquired by her marriage, which occurred within less than a year from the date the decree was entered, need not make the divorced wife a party to an original bill to modify the decree of divorce and have it dated as of the day it was announced.

APPEAL from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding.

WILLIAM P. BOYNTON, and L. P. CRIGLER, for appellant.

JOHN J. BRENHOLT, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill purporting to be in the nature of a bill of review, filed by appellant in the circuit court of Madison county, praying that a decree of divorce be reviewed and so altered that the date when the evidence was heard and the court's decision pronounced in open court be held to be the date when the decree became effective, rather than the date when the written decree was approved by the judge and thereafter filed with the clerk. A demurrer was sustained to the bill and this appeal followed.

The allegations of the bill are, substantially, that Dr. Isaac Moore, of Alton, in September, 1911, filed a bill for divorce in the circuit court of Madison county against his wife, Elizabeth Moore, and after an order of default was entered against the defendant a hearing was had December 2, 1911; that at the close of the hearing the judge announced orally that the divorce was granted, and on his docket wrote the following: "Cause heard. Court finds deft. guilty of extreme and repeated cruelty. Decree for divorce to complainant. Costs to complainant." The bill further represents that the court then ordered a decree prepared in accordance with this finding, but that said formal written decree was not approved by the presiding judge until December 15, 1911, and was not filed by the clerk until December 16, 1911; that December 9, 1912, (which was more than a year after the said oral announcement in the circuit court of Madison county but less than a year from the approval of the written decree by the judge,) Dr. Moore was married to appellant in St. Louis, Missouri, and they thereafter moved to Alton, Illinois, where they lived together, and Dr. Moore practiced his profession as a physician until the sickness which preceded his death, November 19, 1914; that appellant thereafter was granted letters of administration in the probate court of Madison county and proceeded with the administering of the estate until

276 – 4

December 6, 1915, when appellee Ella V. Shook, a daughter
of Dr. Moore by a former marriage, filed a petition in said
probate court alleging that appellant was not the surviving
widow of Dr. Moore and was not entitled to letters of ad-
ministration; that a hearing was had on this petition, and
the probate judge found that appellant and Dr. Moore were
married less than a year from the time he was divorced from
his former wife, and that by reason thereof said marriage
was null and void and appellant was not entitled to any
rights as Moore's widow. The bill further represents that
said marriage was entered into in St. Louis in good faith
by appellant and Dr. Moore, with no intention to defeat
the laws of Illinois nor contravene the public policy of the
State; that they believed the divorce had been granted on
December 2, 1911, when the hearing was had and the oral
announcement made in open court, rather than on Decem-
ber 16, 1911, when the formal written decree was thereaf-
ter filed with the clerk for record. The demurrer alleged,
among other things, no equity in the bill; that appellant was
not a party to the original decree sought to be reviewed;
that appellant was not the lawful wife of Dr. Moore; that
on the facts alleged here no relief can be given by bill of
review. The case has been brought directly to this court
on the ground that a freehold was involved as to the owner-
ship of Dr. Moore's real estate.

For practical purposes, bills of review, or bills in the
nature of bills of review, are divided into three classes,
which are: bills for error appearing on the face of the rec-
ord, bills for newly discovered evidence, and bills for fraud
impeaching the original transaction. The same principles
are generally applicable in this country to all varieties of
this species of bills. (*Harrigan* v. *County of Peoria,* 262 Ill.
36; *Knobloch* v. *Mueller,* 123 id. 554.) It is apparent from
the facts alleged in the bill in this cause that relief cannot
be had by a bill of review or one in the nature of a bill of
review, as the error complained of is not based on newly

discovered evidence or fraud and is not for an error appearing on the face of the original record. However, the bill, while designated a bill of review, contains all the elements required in an original bill asking for relief on the facts stated,—that is, it sets out the rights of the complainant, the manner in which she is injured and contains a clear statement of all the material facts, and while asking for specific relief in changing the original decree, it contains a general prayer asking for such other and further relief as equity may require and to the court may seem meet. The courts must look to the substance of the bill,—its material averments,—and the grounds of equity set up in the writing, to determine its true character. Even though the pleader may give it a wrong name, still if the averments show that the complainant is entitled to relief and the prayer will admit of granting the relief which he says he is entitled to claim, he should not be turned out of court unheard. (*Mc-Connel* v. *Gibson,* 12 Ill. 128; *Thomas* v. *Hebenstreit,* 68 id. 115.) The rule is also in such cases, that although specific relief may be denied, yet under the general prayer such relief may be granted as is justified under the allegations of the bill and to which the proof shows complainant is entitled. (*Casstevens* v. *Casstevens,* 227 Ill. 547, and cases cited.) If appellant, under the allegations of the bill and the facts alleged therein, (which, under the demurrer, must be conceded to be true,) is entitled to the relief asked for, such relief should not be refused even though the wrong name has been given to the bill filed in the trial court.

Beyond question, the formal written decree could have been approved by the chancellor and filed for record with the clerk on December 2, 1911, the same day the chancellor orally announced his decision and made the minutes on his docket that the divorce was then granted, and that date would then, without question, have been the date of the decree of divorce. Under the law in this State a decree in equity is not final until approved by the chancellor and filed

for record. His mere oral announcement of the decision and the grounds upon which it is based is not controlling. The whole matter is completely under his control, and is subject to be altered, changed, or even disregarded, until the written decree is approved and filed for record. (*Cameron* v. *Clinton,* 259 Ill. 599; *Hughs* v. *Washington,* 65 id. 245; *Waggoner* v. *Saether,* 267 id. 32.) It was not necessary that the decree should be signed by the chancellor. (*Horn* v. *Horn,* 234 Ill. 268.) The decree in the original divorce proceedings between Dr. Moore and his former wife must be held to date from the day the decree was filed for record with the clerk, December 16, 1911, unless and until the records in that divorce cause are changed by proper proceedings in court.

The question then is whether from the minutes entered on the docket of the trial court in the original divorce proceedings the records in that case may be so modified and changed as to consider the final decree as having become effective December 2, 1911, instead of December 16, 1911. After a decree has been entered and the term of court has expired, the usual rule is that it cannot be vacated or amended for the purpose of correcting an alleged error which involves the merits of the case unless there is something in the original decree which authorizes the court to retain jurisdiction of the case, but mere clerical errors in a decree may be amended at any time upon proper evidence, and a final decree may be amended even after it is entered, in a material point, where the amendment is in a matter which could have been made a part of the decree as a matter of course if it had been asked for when the decree was rendered. (5 Ency. of Pl. & Pr. 1053.) The power is inherent in every court having general jurisdiction, to correct errors in the making up of its records whereby they fail to express the truth in regard to its proceedings, and this power may be exercised by the court at any time when an error is brought to its attention, when no injury is likely to

result to the parties or other persons by its exercise. The
court may, even after the expiration of the term at which
a judgment was rendered, correct or amend the entry there-
of so as to make it conform to the judgment which the
court actually rendered. (17 Am. & Eng. Ency. of Law,—
2d ed.—818.) This court has held that the trial court at
a subsequent term may from its minutes amend and enter
an order *nunc pro tunc* to correct a judgment so that it
will show the real judgment in fact rendered. (*People* v.
*Quick,* 92 Ill. 580.) The judge's minutes on his docket
have always been held by this court sufficient to authorize
an entry of a judgment *nunc pro tunc* at a subsequent term.
(*Metzger* v. *Morley,* 184 Ill. 81; see, also, *McDonald* v.
*Patterson & Co.* 190 Ill. 121; *Tosetti Brewing Co.* v. *Koeh-
ler,* 200 id. 369; *Chicago, Burlington and Quincy Railroad
Co.* v. *Wingler,* 165 id. 634; *Tynan* v. *Weinhard,* 153 id.
598; *Hogue* v. *Corbit,* 156 id. 540.) Any amendments
permissible under the Statute of Amendments and Jeofails
may be proper at a subsequent term,—and this applies both
to judgments at law and decrees in chancery. (*Davenport*
v. *Kirkland,* 156 Ill. 169.) A mistake in the date of the
judgment or decree may be corrected at a subsequent term.
(17 Am. & Eng. Ency. of Law, 820, and cited cases; *Cob-
bett* v. *Wheeler,* 5 Law Times Rep. 285; *Day* v. *Argus
Printing Co.* 47 N. J. Eq. 594; *York* v. *Ackerman,* 3 id.
460; *Ecker* v. *First Nat. Bank,* 64 Md. 292; see, also,
*Burnham* v. *City of Chicago,* 24 Ill. 496.) The rendition
of a judgment is a judicial act and the entry a ministerial
one. (1 Black on Judgments,—2d ed.—sec. 106.) "That
which the court performs judicially or orders to be per-
formed is not to be avoided by the action or want of action
of the judges or other officers of the court in their min-
isterial capacity." (1 Freeman on Judgments,—4th ed.—
sec. 38.) Without doubt, the date of the decree would
have been entered as of December 2, 1911, even though the
written document had not been presented to the judge un-

til December 16, if the request had been made at that time
to have it so entered or if the document as so presented
had stated that it was entered December 2. During Dr.
Moore's lifetime, had he filed a petition subsequent to the
term at which the decree was granted to have the date
changed and have it entered as of December 2, 1911, in-
stead of December 16, the court, on proper notice to the
interested parties, would have been justified in making such
change. (5 Ency. of Pl. & Pr. 1054.) Can the same re-
lief be granted to appellant under an original bill in equity?

From the allegations of the bill the conclusion neces-
sarily follows that appellant and Dr. Moore believed in good
faith that the decree went into effect on December 2, 1911,
and believed that the marriage ceremony was not performed
until more than a year after said divorce was granted. As
a matter of fact, however, the decree, as shown on the rec-
ords, did not become effective until December 16, 1911, and
the marriage ceremony was performed within less than a
year after that date. Was this mistake by them one of
fact or of law? The general rule is that a mistake of law,
pure and simple, is not adequate ground for relief in equity.
But even when the mistake is one of law equity sometimes
interferes. (2 Pomeroy's Eq. Jur.—3d ed.—sec. 842.)
"Wherever a person is ignorant or mistaken with respect to
his own antecedent and existing private legal rights, inter-
ests, estates, duties, liabilities or other relations, either of
property or contract or personal status, and enters into some
transaction the legal scope and operation of which he cor-
rectly apprehends and understands, for the purpose of af-
fecting such assumed rights, interests or relations or of
carrying out such assumed duties or liabilities, equity will
grant its relief, defensive or affirmative, treating the mis-
take as analogous to, if not identical with, a mistake of
fact." (2 Pomeroy's Eq. Jur.—3d ed.—sec. 849; *Renard*
v. *Clink,* 30 Am. St. Rep. (91 Mich. 1,) 458; *Standard Oil
Co.* v. *Hawkins,* 74 Fed. Rep. 395.) In *Eaglesfield* v. *Mar-*

*quis of Londonderry,* L. R. 4 Ch. Div. 693, Jessel, master
of the rolls, in discussing the question whether a misap-
prehension of the parties was one of law or fact, stated:
"The man who knows the facts is taken to know the law,
but when you state that as a fact which no doubt involves,
as most facts do, a conclusion of law, that is still a state-
ment of fact and not a statement of law." He then gives
an illustration of a man who is asked by a tradesman as to
extending credit to a certain woman, and the answer is,
"You may; she is a single woman of large fortune." It
turns out that the man who gave the answer knew that the
lady had gone through the ceremony of marriage with a
man who was believed to be a married man and that she
had been advised that her marriage with him was illegal.
It was afterward found that the first marriage was void
and therefore that the lady concerning whom the answer
was given was legally married. The man did not tell the
tradesman all these facts but simply stated that she was a
single woman. The master of the rolls held that the state-
ment actually made to the tradesman was, under the circum-
stances, one of fact and not of law. By the same line of
reasoning it should be held that the mistake of appellant and
Dr. Moore as to the date of the entry of the decree was
one of fact and not of law, as they both knew that they
could not legally be married until at least one year after
the divorce.

While the authorities are not harmonious on the ques-
tion, it has been held in various jurisdictions that a court
of equity, by an original bill, may, under certain conditions,
exercise its jurisdiction to correct mistakes in judgments
and decrees where the error is clerical or ministerial and not
judicial. (5 Ency. of Pl. & Pr. 1052, and note; 2 Pome-
roy's Eq. Jur.—3d ed.—sec. 871; 1 Black on Judgments,—
2d ed.—sec. 168.)

No decision of this court has been called to our atten-
tion, and we find none, which would prevent a court of

equity granting the relief prayed for here by an original bill in equity. One of the settled grounds for equitable relief is mistake as to facts. In our judgment, under the allegations of this bill the mistake of appellant and Dr. Moore as to the time when the divorce took effect was a mistake of fact and justifies equitable relief on that ground.

Is there such privity existing between appellant and the parties to the original divorce proceedings, or the property interests involved herein, as to authorize her to ask for this relief? "The term *privity* denotes mutual or successive relationship to the same rights of property." (1 Greenleaf on Evidence,—15th ed.—sec. 189.) This relationship may be by operation of law, by descent or by voluntary or involuntary transfer from one person to another. All privies are in effect, if not in name, privies in estate. (*Towle* v. *Quante,* 246 Ill. 568.) Privies are persons who are partakers of or have an interest in any action or thing or any relation to another. (*Roarke* v. *Roarke,* 77 N. J. Eq. 181.) Privity depends upon the relation of the parties to the subject matter rather than their activity in a suit relating to it after the event. (*Old Dominion Copper Mining Co.* v. *Bigelow,* 203 Mass. 159.) The doctrine that must control here on this question is, that a person making an application, either on motion or by a bill in chancery, to modify or set aside a judgment, either before or after the term at which it was obtained, "must either be a party to such judgment or in privity with such party, or be possessed of rights or equities which are directly and injuriously affected by the judgment." (*In re Burdick,* 162 Ill. 48.) This court has held that a purchaser at a guardian's sale is such a party to a proceeding as to justify him in moving to correct the record of the proceedings leading up to such sale. (*Reid* v. *Morton,* 119 Ill. 118.) Appellant's rights in Dr. Moore's property at his death depend entirely upon the question whether the decree in the divorce proceeding was entered the required length of time before the marriage. Appellant

is possessed of rights and equities which are injuriously affected by that decree if it remains on the record as taking effect December 16 instead of December 2, 1911, the day the hearing was had and the decision in favor of the decree of divorce actually pronounced. The fact that the rights of appellant arose after the entering of the original divorce decree will not defeat her recovery. In most, if not all, cases a privy must come after him to whom he is privy and does not precede. Only those are privies to judgments or decrees who acquire their interest in the subject matter of the suit subsequent to the suit. (23 Am. & Eng. Ency. of Law,—2d ed.—102, and cited cases.) Appellant is injuriously affected, outside of her property rights, by this decree being considered as entered on December 16 instead of December 2, 1911, the same as Dr. Moore would have been found to be in his lifetime if the matter had then been raised. In equity and good conscience appellant is entitled to the relief here sought.

The other question remains whether the divorced wife of Dr. Moore should have been made a party to this proceeding. The general rule is quite firmly established that judgments or decrees cannot be amended, after the term at which they were rendered, upon an *ex parte* application; that due and proper notice must be given to the opposite party of the application and the relief asked. But if the amendment, change or modification is to be based upon matter of record, only, the giving of notice has not always been required. (1 Black on Judgments,—2d ed.—sec. 164.) It has been held that if the amendment relates only to matter of form the notice may be dispensed with. (*Balch* v. *Shaw*, 7 Cush. 282; 1 Black on Judgments,—2d ed.—sec. 164.) If the change asked for in these proceedings as to the original divorce decree affected the merits of that decree in any way, then it would be necessary to make the divorced wife a party to any proceedings to thus change that decree. (*Tucker* v. *People*, 122 Ill. 583.) We cannot see how the

divorced wife of Dr. Moore can be injuriously affected by this modification in the date on which the decree is considered to have become effective. Clearly, such modification relates, in effect, only to a matter of form and not of substance or to the merits of that decree. It was a change that would have been made as a matter of course if asked at the time the decree was filed.

The decree of the circuit court will be reversed and the cause remanded, with directions to overrule the demurrer to the bill, and for further proceedings in accordance with the views herein expressed.

*Reversed and remanded, with directions.*